NOT FOR PUBLICATION                          [Dkt. Ent. 64]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| LUIS BATIZ and CORDELIA CHALLENGER, | |
| Plaintiffs, | Civil No. 12-581 (RMB/AMD) |
| v. | |
| M.D. BROWN, D.K. DETULLIO, and JOHN DOES NEW JERSEY STATE POLICE TROOPERS 1-5, | **OPINION** |
| Defendants. | |

APPEARANCES:

Joseph C. Grassi, Esq.
Barry, Corrado, Grassi & Gibson, P.C.
2700 Pacific Avenue
Wildwood, N.J. 08260

    Attorney for Plaintiffs

Marvin L. Freeman, Esq.
State of New Jersey
Office of the Attorney General
25 Market Street, P.O. Box 112
Trenton, N.J. 08625

    Attorney for Defendants

**BUMB**, UNITED STATES DISTRICT JUDGE:

    This matter comes before the Court upon a motion for

summary judgment on all of Plaintiffs' claims filed by the

defendants, New Jersey State Troopers Daniel Detullio

1

("Detullio") and Michael Brown ("Brown").  For the reasons outlined below, Defendants' motion is GRANTED in part and DENIED in part.

## I.  <u>FACTUAL BACKGROUND</u>

The lawsuit stems from the arrest of Plaintiff Luis Batiz ("Batiz") after he called New Jersey State Troopers to his home to resolve an altercation between a storage company, 1-800-Pack-Rat ("Pack Rat"), and himself.  The dispute arose on February 23, 2010, as Pack Rat employees attempted to repossess a storage pod located on Batiz's property.  (Defs.' Ex. O at 28:19-29:8, 35:21.)  Upon arriving at the scene, Trooper Detullio spoke with both an employee of Pack Rat and Batiz.  (Plaintiffs' Resps. to Defs.' Statement of Material Facts ("SOF") at ¶ 2 [Dkt. No. 69-2.])[1]  The Pack Rat employee told Detullio that Pack Rat sought repossession of the storage pod because it determined Batiz was behind several months on payments, (Defs.' Ex. N at 9:3-10, 9:20-24), though Batiz disputes that he was in arrears.  (Defs.'

---

[1] The Court notes that Defendants failed to file a response to Plaintiffs' Counterstatement of Material Facts, as required by Local Rule 56.1.  <u>Id.</u>  ("The movant shall respond to any such supplemental statement of disputed material facts as above, with its reply papers.")  Although non-compliance with this rule is grounds for the dismissal of a motion, <u>Small v. Whittick</u>, Civ. A. No. 06-1363 (RMB/JS), 2010 WL 3881303, at *1 n.1 (D.N.J. Sept. 27, 2010), or deeming all of the facts contained in the unanswered statement admitted, the Court finds sufficient grounds upon which to resolve the motion contained in the record and Plaintiffs' Responses to Defendants' Statement of Material Facts which were properly submitted according to Rule 56.1.

Ex. O at 29:19-21.)  Plaintiff sought to have Pack Rat removed

as trespassers from his property.  (Id. at 29:7-8.)

  To prevent the removal of his property, prior to the

arrival of Detullio on the scene, Batiz took a device belonging

to Pack Rat and essential to the loading of the pod onto Pack

Rat's truck (the "lifting bar").  (Defs.' Ex. O at 42:5-9, Ex. N

at 14:22-25.)  Plaintiff placed the lifting bar away from the

immediate area of his dispute with Pack Rat.[2]  Also in an effort

to prevent the removal of the storage pod, Batiz's wife,

Plaintiff Cordelia Challenger ("Challenger"), parked her vehicle

(a black Honda CRV) in front of Pack Rat's truck to block its

exit.  (SOF at ¶ 12.)[3]

  Ultimately, after reviewing documents relating to the

dispute, (SOF at ¶ 4), Detullio felt the best course of conduct

was to permit Plaintiff to remove his personal belongings from

the storage pod and allow Pack Rat to leave with it.  (Defs.'

---

[2] Descriptions of where specifically Batiz placed the lifting bar
vary.  Detullio testified it was placed behind a door.  (Defs.'
Ex. J at 23:25.)  Batiz testified it was placed "in the side of
the house."  (Defs.' Ex. O at 42:14-15.)  John Costas, a Pack
Rat employee, said it was placed through a window.  (Defs.' Ex.
N 15:1-20.)  It is, at least, undisputed that Batiz placed the
lifting bar out of the immediate area of the conflict, which
took place in the front of Batiz's house.  (SOF at ¶ 15.)
[3] While at Batiz's house, the parties agree that Detullio ran a
motor vehicle check on this car, (SOF at ¶ 13), and during that
check it is undisputed that Detullio determined the registration
was invalid.  (Defs.' Ex. J at 86:14-16.)  He testified that he
did not issue a summons because the car was not operating on the
roadway.  (Id. at 86:17-23.)

Ex. J at 26:4-37:6; Defs.' Ex. O at 47:17-48:9.)  While Batiz
acquiesced to Detullio's solution by removing his belongings
from the storage pod so that it could be transported away, he
was upset with the resolution of what he felt was a civil
dispute by a state trooper. (Defs.' Ex. O at 47:1-11.)  Batiz
also instructed Challenger to move her car from in front of Pack
Rat's truck, which she did. (Defs.' Ex. L at 32:3-10.)

    While on the scene, Detullio asked Batiz for his name, date
of birth, and social security number at least three times. (SOF
at ¶ 10.)  Batiz refused to provide any identifying information
other than his name to Detullio. (Id.; Defs.' Ex. O at 54:17-
20.)[4]  In his deposition, Batiz later explained that his refusal
to provide this information was because he felt that his
identifying information was irrelevant to his dispute with Pack
Rat. (Defs.' Ex. O at 54:21-24.)  Batiz then instructed
Detullio to leave his property. (Id. at 56:12-13.)  According
to Batiz, Detullio did not leave and insisted upon completing
his documentation of the incident. (Defs.' Ex. O at 56:14.)
Detullio then placed Batiz under arrest, (Defs.' Ex. O at 59:16-
17), because, as Batiz testified, he would not provide any

---

[4] Detullio stated he was only able to obtain Batiz's first name,
initially. (Defs.' Ex. J at 104:14-15.)  Batiz claims he
provided his entire name "Luis A. Batiz" at the scene. (Defs.'
Ex. O at 54:17-20.)

information.  (Id. at 58:13-59:25.)

At the police station, though Detullio continued to ask
Batiz for identifying information, Batiz refused to provide it,
including refusing to be fingerprinted or photographed.  (Defs.'
Ex. O at 66:20-22, 68:18-23, 69:19-21.)  Further complicating
the identification process, Batiz has never been issued a
driver's license in his adult life.  (SOF at ¶ 23.)

On that same day, Detullio filed a criminal complaint
against Batiz charging him with four offenses: (1) a disorderly
persons offense in violation of N.J. Stat. 2C:33-2(a)(2); theft
in violation of N.J. Stat. 2C:20-3(a); obstructing
administration of law or other governmental function in
violation of N.J. Stat. 2C:29-1; and (4) hindering apprehension
in violation of N.J. Stat. 2C:29-3(a)(7).[5]  (See Defs.' Ex. C.)
A judicial officer found probable cause for the issuance of the
complaint.  (Id.)

At some point on the same day, Challenger drove herself to
the police station in her unregistered Honda CRV.[6]  (SOF at ¶ 2

---

[5] N.J. Stat. 2C:29-3(a)(7) concerns hindering apprehension of
another.  Based upon the Detullio's narrative description of the
charge, it seems evident that he sought to charge Batiz with
2C:29-3(b)(4), which is a similar provision dealing with
hindering apprehension of oneself.  Plaintiffs do not address
this clerical error in their summary judgment briefing.
[6] It is disputed whether Challenger was called to the police
station or she arrived of her own accord.  Challenger asserts
that she received a call to come collect her husband, (Defs.'
Ex. L at 51:22-23), while Detullio and Brown indicate they did

(Challenger section).)  Upon arriving at the precinct, she was
asked to provide identifying information about her husband,
which she refused to provide.  (<u>Id.</u> at ¶¶ 8, 10.)  Challenger
was then handcuffed by troopers.  (Defs.' Ex. L at 53:18-21; SOF
at ¶ 6 (Challenger section).)  She was not fingerprinted or
photographed.  (SOF at ¶ 7 (Challenger section).)  In total, the
dispatch report indicates that Challenger was at the police
station for one hour and one minute.  (<u>Id.</u> at ¶ 5.)

    After additional attempts to identify Batiz were made by
Detullio, (Defs.' Ex. J at 125:18-19), Detullio contacted United
States Immigration and Customs Enforcement ("ICE").  (Ex. J at
132:20-22.)[7]  According to Detullio, he was informed by ICE that
they had no information on Batiz.[8]  (Ex. J at 133:6-9.)  At some
point on February 23, 2010, an immigration detainer was also
placed on Batiz by the Department of Homeland Security.  (Defs.'
Ex. D.)  Importantly, Batiz does not allege that Defendants

---

not call Challenger.  (Defs.' Ex. J 116:20-24; Defs.' Ex. K at
32:17-23.)
[7] Batiz is a United States citizen.  (Defs.' Ex. D (photocopy of
Batiz's expired United States passport).)
[8] Based on the documentation from ICE, it appears as though Batiz
had provided his full name to Detullio if not at the scene, then
sometime thereafter.  (<u>See</u> Defs.' Ex. C (criminal complaint
against John Doe "a/k/a Luis Batiz"); Ex. D (immigration
detainer with same).)  Detullio, however, has testified that he
did not believe Batiz gave his actual name because he could not
find any record of Batiz in databases he consulted.  (Defs.' Ex.
J at 131:3-134:3; <u>see also</u> Defs.' Ex. C (criminal complaint
filed by Detullio indicating Batiz had provided a false name).)

directed the filing of the detainer.

On August 4, 2010, Batiz and Challenger appeared for trial in municipal court. (SOF at ¶ 30.) At that trial, during which Detullio appeared as the sole witness, Batiz was convicted of theft, obstruction, and disorderly conduct; he was acquitted of hindering apprehension. (SOF at ¶ 32.) Challenger was acquitted of hindering apprehension. (Defs.' Ex. E at 86:14-18.)[9] On appeal, the New Jersey Superior Court, Law Division granted a trial de novo and convicted Batiz of only theft. (Defs.' Ex. G.) On appeal, the New Jersey Superior Court, Appellate Division overturned that theft conviction, ruling that the record at trial did not contain evidence that Batiz intended to permanently keep the lifting bar and that the affirmative defense of claim of right applied because taking the lifting bar was the only method by which Batiz could protect his property in the pod. (Defs.' Ex. H.) Accordingly, both Challenger and Batiz were acquitted of all charges against them.

On January 31, 2012, Plaintiffs filed a complaint with this Court. [Dkt. No. 1.] After a motion to dismiss and several amendments, Plaintiffs filed the operative complaint on June 3, 2013. [Dkt. No. 36.] At the conclusion of discovery,

---

[9] The record indicates one reason for Challenger's acquittal was that she was inadvertently charged under the wrong section for the offense. (Defs.' Ex. E at 81:17-25, 86:14-18.)

Defendants filed the instant motion for summary judgment on
December 23, 2014.  [Dkt. No. 64.]

II.   **<u>STANDARD OF REVIEW</u>**

Summary judgment is proper if "the movant shows that there
is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a).  A fact is "material" if it will "affect the outcome of
the suit under the governing law . . . ."  <u>Anderson v. Liberty
Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A dispute is "genuine"
if it could lead a "reasonable jury [to] return a verdict for
the nonmoving party."  <u>Id.</u>

When deciding the existence of a genuine dispute of
material fact, a court's role is not to weigh the evidence; all
reasonable "inferences, doubts, and issues of credibility should
be resolved against the moving party."  <u>Meyer v. Riegel Prods.
Corp.</u>, 720 F.2d 303, 307 n.2 (3d Cir. 1983).  However, a mere
"scintilla of evidence," without more, will not give rise to a
genuine dispute for trial.  <u>Anderson</u>, 477 U.S. at 252.
Nevertheless, a court does not have to adopt the version of
facts asserted by the nonmoving party if those facts are
"utterly discredited by the record [so] that no reasonable jury"
could believe them. <u>Scott v. Harris</u>, 550 U.S. 373, 380 (2007).
In the face of such evidence, summary judgment is still
appropriate "where the record . . . could not lead a rational

trier of fact to find for the nonmoving party . . . ."
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
587 (1986).

     The movant "always bears the initial responsibility of
informing the district court of the basis for its motion, and
identifying those portions of 'the pleadings, depositions,
answers to interrogatories, and admissions on file, together
with the affidavits, if any,' which it believes demonstrate the
absence of a genuine issue of material fact." Celotex Corp. v.
Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P.
56(c)).  Then, "when a properly supported motion for summary
judgment [has been] made, the adverse party 'must set forth
specific facts showing that there is a genuine issue for
trial.'" Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P.
56(e)).  The non-movant's burden is rigorous: it "must point to
concrete evidence in the record;" mere allegations, conclusions,
conjecture, and speculation will not defeat summary judgment.
Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995);
Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing
Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228
(3d Cir. 2009)) ("[S]peculation and conjecture may not defeat
summary judgment.").

**III. ANALYSIS**

     Batiz brings claims for false arrest, false imprisonment,

malicious prosecution, abuse of process, and conspiracy.
Challenger asserts claims for false arrest, false imprisonment,
and conspiracy.  Defendants move for summary judgment on all of
Batiz's and Challenger's claims.  Defendants also argue they are
entitled to qualified immunity.

A. **False Arrest - Batiz**

Defendants contend that they are entitled to summary
judgment on Batiz's false arrest claims[10] because Detullio had
probable cause to arrest Plaintiff for theft, obstruction,
hindering apprehension and disorderly conduct.  Plaintiffs
respond that a jury could find that none of these arrests were
predicated upon probable cause.  Because the Court finds
probable cause existed for the theft arrest, Batiz's claims for
false arrest are defeated in their entirety.  Johnson v. Knorr,
477 F.3d 75, 84-85 (3d Cir. 2007) ("[I]n analyzing false arrest
claims, a court to insulate a defendant from liability need only
find that probable cause existed as to any offense that could be
charged under the circumstances.") (alterations omitted).

"Probable cause exists where the facts and circumstances
within the arresting officer's knowledge are sufficient to
warrant a reasonable person to believe an offense had been
committed."  United States v. McGlory, 968 F.2d 309, 342 (3d

---

[10] Plaintiffs bring false arrest claims under both 42 U.S.C. §
1983 and N.J. Stat. 10:6-2.

Cir. 1992).[11]  Although the existence of probable cause at the time of arrest is generally a question for the jury, Merkle v. Upper Dublin School Dist., 211 F.3d 782, 788 (3d Cir. 2000), when there are no material, disputed facts, the Court may resolve the issue as a matter of law.  Id. at 788-89.  In determining whether probable cause existed at the time of an arrest, the "arresting officer's state of mind" and the charges "actually invoked by the arresting officer" are irrelevant. Devenpeck v. Alford, 543 U.S. 146, 153 (2004); Jaegly v. Couch, 459 F.3d 149, 154 (2d Cir. 2006).  Courts must instead objectively assess whether, at the time of the arrest and based upon the facts known to the officer, probable cause existed "as to any offense that could be charged under the circumstances." Wright v. Philadelphia, 409 F.3d 595, 602 (3d Cir. 2005); Barna v. Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994).  "The validity of an arrest is determined by the law of the state where the arrest occurred."  Pollock v. Philadelphia, 403 F. App'x 664, 669 (3d Cir.2010) (citing United States v. Myers, 308 F.3d 251, 255 (3d Cir.2002)) (quotations omitted).

---

[11] The standard for probable cause is identical under federal and New Jersey law.  Maples v. Atlantic City, Civ. A. No. 06-2200, 2008 WL 2446825, at *6 (D.N.J. June 16, 2008); New Jersey v. Basil, 202 N.J. 570, 585-86 (2010) (reciting standard for probable cause to arrest under New Jersey law and citing to federal law as the basis for that standard).

Under New Jersey law, "A person is guilty of theft if he
unlawfully takes, or exercises unlawful control over, movable
property of another with purpose to deprive him thereof."  N.J.
Stat. 2C:20-3(a).  "Deprive" is defined as "(1) to withhold or
cause to be withheld property of another permanently or for so
extended a period as to appropriate a substantial portion of its
economic value, or with purpose to restore only upon payment of
reward or other compensation; or (2) to dispose or cause
disposal of the property so as to make it unlikely the owner
will recover it."  Id. at 2C:20-1.  Detullio argues the record,
even when viewed in the light most favorable to Plaintiffs,
establishes that he had probable cause to arrest Batiz because
the facts, viewed in their totality, would lead a reasonable
person to believe Batiz had committed theft.  (Defs.' Br. at 12-
18.)  Plaintiffs' counterargument focuses principally on Batiz's
state of mind.  They argue that a jury could find that it was
not reasonable to determine Batiz had the intent to permanently
deprive Pack Rat of the lifting bar.  (Pls.' Br. at 3-6.)

Under the undisputed facts as established, it was
reasonable to believe Batiz had the requisite mental state.
First, Batiz agrees that the movers told Detullio that Batiz
took the lifting bar, (SOF at ¶ 5), and he was still in
possession of the lifting bar when Detullio arrived.  (Id. at ¶
7.)  Second, Batiz took the lifting bar in an attempt to stop

12

the repossession of the storage pod, and Plaintiffs assert in their brief that Detullio was aware of this. (Defs.' Ex. O at 42:5-9; Pls.' Br. at 5.)  Third, Batiz returned the lifting bar only after the Pack Rat employee (not Batiz) volunteered to Detullio that it was taken. (Id. at ¶ 5.)  And, Batiz only returned the lifting bar after Detullio instructed him to do so. (Id. at ¶ 7.)  Most importantly, it is undisputed that Batiz placed the lifting bar away from the area of dispute inside or near his house. (See supra at n.2.)

    Plaintiffs' argument against probable cause hinges upon the fact that a jury could find there was no "reasonable basis to conclude [Batiz] had the requisite mental state." (Pls.' Br. at 5.)  But, the relocation of the bar gives rise to such a basis. Moreover, the inherently nebulous determination of mental state on the scene of the crime does not necessarily defeat a showing of probable cause. See Hebron v. Touhy, 18 F.3d 421, 423 (7th Cir. 1994) (noting that "Police have a hard time evaluating competing claims about motive; they are entitled to act on the basis of observable events and let courts resolve conflicts about mental states."); Kmetz v. Zens, 215 F.3d 1330 (TABLE), at *2 (7th Cir. 2000) (citing Hebron in the context of a false arrest claim under a similar theft statute with regard to intent to permanently deprive).  Based upon the undisputed facts available to Detullio, including Batiz's relocation of the

lifting bar, there was a "fair probability" Batiz had the intent to permanently deprive.  Watkins v. Attorney General of New Jersey, Civ. A. No. 06-1391 (JLL), 2010 WL 1462941, at *3 (D.N.J. April 8, 2010).[12]

Furthermore, even if the Court were to disregard that analysis, probable cause also existed to arrest Batiz even if the facts and circumstances available to Detullio did not make it reasonable to believe he sought to permanently deprive Pack Rat of the lifting bar.  "Deprive" is also defined as withholding property of another "with purpose to restore only upon payment of reward or other compensation."  N.J. Stat. 2C:20-1.  Under that definition of deprive, it would be equally reasonable for a person to believe that, even if Batiz intended

---

[12] Although it does not rely on the trial courts' decisions, the Court in reaching this decision is also mindful of the fact that Plaintiff Batiz was convicted of theft by the Municipal Court, (Defs.' Ex. E at 84:6-24), and thereafter was re-convicted after a trial de novo by the New Jersey Superior Court, Law Division, (Defs.' Ex. G), including arguments before each court concerning Batiz's intent to permanently deprive, (Defs.' Ex. E at 68-71, Defs.' Ex. F at 21-22).  While, generally speaking, trial results are irrelevant to the information available to a reasonable person at the scene, it would be a strange result to hold that a reasonable person could not believe Batiz committed theft under the lesser probable cause standard, when two judges relying on Detullio as the only witness called, agreed that Batiz was guilty of that theft under the reasonable doubt standard.  This is the case even though those judgments were overturned by the Appellate Division on the issue of whether it had been demonstrated Batiz had the requisite mental state beyond a reasonable doubt, a much higher standard than probable cause.  (Defs.' Ex. H.)

to return the lifting bar upon Pack Rat's agreement to depart without repossessing his storage pod, that this was done "with purpose to restore" the lifting bar to Pack Rat "only upon payment of reward or other compensation," compensation, in that case, being fulfilled by Pack Rat foregoing its perceived right to repossess the storage pod, in other words "re-crediting" arrears.

The Court is quite aware of Batiz's argument that Detullio was presented with copies of the contract between the parties that indicated that he was not in arrears and perhaps no repossession was necessary. (Pls.' Br. at 5.) That noted, whether Batiz was correct that he was not in arrears on his storage pod is unrelated to whether probable cause existed to arrest Batiz for theft of the lifting bar. Simply because Batiz took the lifting bar to prevent the perceived wrongful repossession of his storage pod does not dictate that he did not have the intent to permanently deprive Pack Rat of it, even if done under a "claim of right" as Plaintiff argues. See Ciambrone v. Smith, Civ. No. 07-3380 (JBS), 2008 WL 4378405, at *9 (D.N.J. Sep. 19, 2008) ("[T]he merits of an alleged affirmative defense should be assessed by prosecutors and judges, not policemen.").[13]

---

[13] The Court is also unconvinced by Batiz's argument that the theft was de minimis. (Pls.' Br. at 4-6.) In the context of

The facts as they stand are sufficient as a matter of law for a reasonable person to believe that Batiz had the intent to "deprive" Pack Rat under two separate definitions of that term. See Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000) ("[T]he law recognizes that probable cause determinations have to be made on the spot under pressure and do not require the fine resolution of conflicting evidence that a reasonable doubt or even a preponderance standard demands.") Because, under the particular circumstances of this arrest, an objectively reasonable person would have believed that Batiz had committed a theft, this Court grants Defendants' request for summary judgment on all of Batiz's false arrest claims. The Court does not reach the remaining charges for which Batiz was arrested because probable cause need not be present for all offenses, but only for "any offense that could be charged under the circumstances." Johnson, 477 F.3d at 84-85.

## B. **False Arrest - Challenger**

Defendants also move for summary judgment on Challenger's false arrest claim. Challenger contends that she was falsely arrested once she arrived at the police station, where she was

---

the situation, the lifting bar—which was a piece of equipment necessary to repossess the storage pod—is a far cry from a few pieces of fruit taken out the door of a restaurant buffet for dessert. Cf. State v. Nevens, 197 N.J. Super. 531, 535 (Law Div. 1984).

handcuffed to a bench for approximately an hour.  (Pls.' Br. at

10-13.)  Defendants have conceded that Challenger was seized for

purposes of the Fourth Amendment, but contend that this seizure

did not amount to an arrest and was instead only an

investigatory stop to investigate her expired registration.

(Defs. Br. at 27-35.)  Defendants alternatively argue that even

if the seizure was an arrest, it was premised on probable cause.

(Defs.' Br. at 35-38.)  Because the Court is persuaded by

Defendants' second argument—that probable cause supported the

arrest of Challenger—the Court does not reach the first

argument.

     A person commits the offense of hindering apprehension of

another if:

> [W]ith purpose to hinder the detention, apprehension,
> investigation, prosecution, conviction or punishment of
> another for an offense . . . [she] . . . [s]uppresses, by
> way of concealment or destruction, any evidence of the
> crime, . . . which might aid in . . . the lodging of a
> charge against him.

N.J. Stat. 2C:29-3(a)(3).

     Here, Challenger arrived at the police station after the

arrest of her husband and was ordered to provide identifying

information about her husband who had been arrested.  (SOF at ¶¶

2, 8 (Challenger section).)  She arrived at the station after

she was told where to go by the troopers.  (Defs.' Ex. L at

48:22-24.)  Challenger admits that when she "was ordered to

provide pedigree information about Batiz, Detullio was still
conducting the investigation at the station." (SOF at ¶ 9
(Challenger section).) Challenger also admits she refused to
provide the requested information. (Id. at ¶ 10.) These
undisputed facts provide the basis for probable cause. A
reasonable person would have determined that Plaintiff was
refusing to provide this evidence of her husband's identity,
while knowing her husband was being investigated, for purposes
of hindering the troopers' investigation of him. Accordingly,
summary judgment is proper.

Additionally, Plaintiffs argue that "[t]here is no case law
to support the notion that refusing to provide the name and
pedigree information of another is a violation of this statute."
(See Pl.'s Br. at 13.) Importantly, this argument by Plaintiffs
admits that even if this Court is incorrect in regard to
probable cause, that qualified immunity would nonetheless apply
because the law would not be clearly established. Cordial v.
Atlantic City, Civ. A. No. 11-cv-1457 (RMB/AMD), 2014 WL
2451137, at *4 (D.N.J. June 2, 2014) ("The doctrine of qualified
immunity protects government officials from liability for civil
damages insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known.") (quoting Pearson v.
Callahan, 555 U.S. 223 (2009).) As such, should probable cause

be lacking, qualified immunity would nevertheless bar
Challenger's cause of action.

## C. **False Imprisonment – Batiz and Challenger**

Defendants also argue that summary judgment is proper on
Batiz's and Challenger's claims for false imprisonment
associated with the arrests of Plaintiffs.  As Defendants
correctly point out, the presence of probable cause to arrest
defeats a claim of false imprisonment pursuant to that arrest.
Sheedy v. Philadelphia, 184 Fed. Appx. 282, 284 (3d Cir. 2006);
Houck v. Ferrari, 57 F. Supp. 3d 377, 384 n.7 (D.N.J. Oct. 22,
2014).  Because this Court has determined that probable cause
existed for an offense at the time each Plaintiff was arrested,
summary judgment in favor of Defendants is proper.

## D. **Malicious Prosecution – Batiz**[14]

Defendants also move for summary judgment on Batiz's claim
that he was subject to malicious prosecution in violation of 42

---

[14] Only Batiz alleges in the Third Amended Complaint that he was
subject to a malicious prosecution.  (3d Am. Compl. ¶ 41-48.)
The complaint is explicit in this regard.  Plaintiffs' brief,
however, is somewhat ambiguous as to whether it is arguing
Challenger was also subject to malicious prosecution.  (See,
e.g., Pl.'s Br. at 18 ("Accordingly, a rational juror could find
that defendants maliciously prosecuted plaintiffs.").)
Regardless, because the claim of malicious prosecution has not
been alleged by Challenger in the operative complaint, the Court
does not address it here.  Case law is clear that one cannot
amend a complaint through a brief.  See Meale v. Egg Harbor
City, Civ. A. No. 14-5860 (RMB/JS), 2015 WL 3866222, at *7
(D.N.J. June 23, 2015) ("Plaintiff cannot amend a complaint via
an opposition brief.") (citing Bell v. Philadelphia, 275 F.
App'x 157, 160 (3d Cir. 2008)).

U.S.C. § 1983 and his constitutional rights, as well as New
Jersey state law.

"To prevail on a Section 1983 claim for malicious
prosecution, a plaintiff must demonstrate that: (1) the
defendant initiated a criminal proceeding; (2) the criminal
proceeding ended in plaintiff's favor; (3) the proceeding was
initiated without probable cause; (4) the defendant acted
maliciously or for a purpose other than bringing the plaintiff
to justice; and (5) the plaintiff suffered deprivation of
liberty consistent with the concept of seizure as a consequence
of a legal proceeding." Stetser v. Jinks, Civ. A. No. 10-3094
(RMB/JS), 2013 WL 3791613, at *2 (D.N.J. July 19, 2013), aff'd,
572 F. App'x 85 (3d Cir. June 5, 2014).[15]  When claims of
malicious prosecution are brought against an arresting officer,
it must also be shown that the chain of causation was not broken
by the "intervening exercise of independent judgment" by a judge
or prosecutor.  Freeman v. State, 347 N.J. Super. 11, 25 (App.
Div. 2002).

Defendants contend that the charges were initiated with
probable cause, and even if they were not, the exercise of

---

[15] Under New Jersey state law, the requirements are similar.
Stolinski v. Pennypacker, 772 F. Supp. 2d 626, 636-37 (D.N.J.
2011).  Because the Court determines all of Defendants'
arguments do not prevail, it will discuss the state and federal
claims together.

intervening independent judgment by the judge and prosecutor
breaks the chain of causation.  Finally, Defendants contend that
the defense of the additional charges resulted in no further
deprivation of Batiz's liberty.  The Court addresses these
arguments in order.

### 1. Probable Cause for Bringing Proceedings

Defendants argue first that Detullio initiated the
proceedings for hindering apprehension, obstruction and
disorderly conduct with probable cause.[16]  (Defs.' Br. at 40.)
The Court addresses each of these in turn below.[17]

*(a)  Hindering Apprehension*

First, as for the hindering apprehension charge, taking the
evidence in the light most favorable to Plaintiff, a jury could
find that there was no probable cause to bring this charge.
Hindering one's own apprehension under N.J. Stat. 2C:29-3(b) is
defined under New Jersey law substantially the same as hindering
apprehension of another, (see supra Part III(B)).  According to

---

[16] This Court has already determined the arrest for theft was
initiated with probable cause.  (See supra Part III(A).)
[17] The finding of probable cause on one charge does not foreclose
a malicious prosecution cause of action against a defendant for
having brought criminal charges involving different elements.
Johnson, 477 F.3d at 84-85.  Given the Court holds probable
cause is in dispute for three of four claims on the criminal
complaint, the analysis is the same under New Jersey law,
despite New Jersey's disfavor of malicious prosecution causes of
action.  Cf. Stolinksi, 772 F. Supp. 2d at 640 (suggesting that
New Jersey law may prohibit malicious prosecution actions where
a majority of claims are brought with probable cause).

Plaintiff, he provided his name to Detullio.  (Defs.' Ex. O at
54:17-20.)  Moreover, granting all inferences in his favor, he
initially refused to provide his social security number and
birthdate not to hinder what would soon turn out to be
Detullio's criminal investigation for an offense, but to prevent
such information from working its way into the storage pod civil
dispute.  (Id. at 53:25-55:9.)  By the time Batiz was charged
with hindering apprehension, however, he had already provided
his identifying information to Detullio, who was simply unable
to verify it.  (See Defs.' Ex. C; Defs.' Ex. J at 131:3-143:3)

> (b)  *Obstructing Administration of Law*

Second, regarding the obstruction of administration of law
charge, the parties agree that Batiz in no way <u>physically</u>
obstructed.  Under New Jersey law, a person commits the crime of
obstruction when he or she:

> [P]urposely obstructs, impairs or perverts the
> administration of law or other governmental function or
> prevents or attempts to prevent a public servant from
> lawfully performing an official function by means of
> flight, intimidation, force, violence, or physical
> interference or obstacle, or by means of any independently
> unlawful act.

N.J. Stat. 2C:29-1(a).  The Court finds <u>State v. Camillo</u>, 382
N.J. Super. 113, 122 (App. Div. 2005) to be controlling.  In
that case, the court explained that the language 2C:29-1(a) "is
clear" and "requires a physical interference, not merely an
interference."  <u>Id.</u> at 122; <u>see also</u> <u>State v. Philpot</u>, No. 12-

09, 2010 WL 5128658, at *4 (App. Div. 2010).  Defendants argue

that probable cause existed but have pointed to no evidence in

the record which suggests that Batiz engaged in "flight,

intimidation, force, violence, or physical interference or

obstacle."  As such, because there was no physical interference,

there was no probable cause to charge a violation of

obstruction.[18]

*(c)  Disorderly Conduct*

Finally, regarding the disorderly conduct charge, taking

the evidence in the light most favorable to Plaintiff, a jury

could find that probable cause did not exist at the time of

charging.  Under New Jersey law, a person is guilty of

disorderly conduct if:

> [W]ith purpose to cause public inconvenience, annoyance or
> alarm, or recklessly creating a risk thereof he (1) engages
> in fighting or threatening, or in violent or tumultuous
> behavior; or (2) creates a hazardous or physically
> dangerous condition by any act which serves no legitimate
> purpose of the actor.

N.J. Stat. 2C:33-2(a).  The record does not indicate any

fighting, threatening or violent behavior.  As such, the issue

is whether Batiz's behavior would have been believed by a

---

[18] The Court is also unpersuaded by Defendants' argument that
probable cause existed to arrest Batiz for obstruction because
he committed it "by means of any independently unlawful act."
(Defs.' Br. at 18-21.)  Batiz's theft was not the means by which
he purportedly obstructed Detullio.  He did this by refusing to
give Detullio his name.

reasonable person to be "tumultuous" with purpose or reckless
risk of public inconvenience, annoyance or alarm.  Although
Detullio's and Brown's account of the dispute in front of
Batiz's house indicates that he was yelling and screaming and
losing control of himself, (Defs.' Ex. J 63:5-11; Defs.' Ex. K
at 21:6-9), Batiz describes his behavior in much more measured
tones.  He concedes that he was "upset." (SOF at ¶ 14.)  Both
parties are correct in pointing out that being angry with the
police does not in and of itself give rise to probable cause to
arrest for disorderly conduct.  Batiz describes his discussion
with Detullio in the tone of a sharp back-and-forth discussion.
(Defs.' Ex. O 51-56.)  The dispute occurred on Batiz's property
and the only person in public nearby was Batiz's neighbor, who
could see what was going on, but has not given any testimony
supporting Defendants' version of events.  (SOF at ¶ 15, 16.)
This evidence is sufficient for a jury to find that a reasonable
person would not have believed his behavior was tumultuous or
that he had the specific purpose to cause a public
inconvenience, annoyance or alarm.  Thus, giving credence to
Batiz's version of events as it must, the Court holds that a
jury could find that Detullio did not have probable cause for
the disorderly conduct charge.

### 2. Independent Judgment

Defendants next argues that even if the hindering,

obstruction and disorderly conduct charges were not predicated
on probable cause, the intervening probable cause determination
by the judge and decision by the prosecutor to pursue the
charges each breaks the causal chain.  As Defendants note, "[i]t
is well settled that the chain of causation between a police
officer's unlawful arrest and a subsequent conviction and
incarceration is broken by the intervening exercise of
independent judgment.  At least that is so in the absence of
evidence that the police officer misled or pressured the
official who could be expected to exercise independent
judgment."  Freeman, 347 N.J. Super. at 25.  In response,
Plaintiff avers that the independent judgment of the judge and
prosecutor was impacted by the misleading description provided
by Detullio concerning the events.

     Based on the record before this Court, there is a material
dispute as to whether the criminal complaint presented to the
judge contained accurate facts.  In detailing the obstruction
charge, Detullio described Batiz as "refusing to give known
information to the state police about an ongoing investigation."
As noted above, there is a material dispute as to whether Batiz
refused to provide his name, (Defs.' Ex. O at 54:17-20), and,
even if so, whether Batiz refused to do so with regard to an
ongoing investigation.  (Id. at 54:6-8.)  Regarding the
hindering apprehension charge, Detullio alleged in the complaint

that Batiz provided the false name of "Luis Batiz" and birthdate
to troopers.  (Defs.' Ex. C.)  Since the complaint provided no
factual basis, but was based on Detullio's opinion only, a jury
could find that this was misleading because, as it turned out,
the name and date of birth were correct information.  (Id.)
Regarding the disorderly conduct charge, Detullio described
Batiz as "yelling and screaming at troopers and refusing to
allow access to his property." (Defs.' Ex. C.)  As noted above
in the probable cause analysis, this description of the events
is disputed by Batiz, who insists he was irate with the troopers
and does not describe himself yelling and screaming.  (See supra
Part III(D)(1)(c).)  If a jury finds Batiz's version of facts
credible, then the judge's determination of probable cause based
upon Detullio's exaggerated complaint does not absolve Detullio
from liability.

Defendants are correct that "there exists a presumption
that the independent judgment of the prosecutor precludes a
plaintiff from proving that an arresting officer was the cause
of an allegedly malicious prosecution." Stolinski v.
Pennypacker, Civ. A. No. 07-3174(JBS), 2008 WL 5136945, at *9
(D.N.J. Dec. 4, 2008).  Here, while it is true that the
Prosecutor D'Arrigo elected to pursue the charges after Detullio
filed the criminal complaint, Detullio was involved in the
prosecution of Batiz after executing the arrest and filing the

26

criminal complaint.  Taking the evidence in the light most favorable, in addition to filing the complaint, as discussed above, Detullio was the singular witness against Batiz during the criminal prosecution, (see Defs.' Ex. E), and was involved in later stage discussions with the prosecutor concerning the case, (see Defs.' Ex. 51:25-52:6.)  This level of involvement in the criminal prosecution is more than the basic act of arresting the defendant referenced in Stolinski, 2008 WL 5136945, at *9. Giving Plaintiff every reasonable inference, a jury could find that this degree of participation by Detullio was sufficient to overcome the presumption and render the prosecutor's decision to press ahead no longer "independent" for purposes of breaking the causal chain.

In short, under the lens of summary judgment, it is disputed whether the judge and prosecutor were able to exercise independent judgment with regard to their determinations to allow the prosecution to proceed.  As such, summary judgment in favor of Defendants is improper on this ground.[19]

### 3. Supplemental Deprivation

---

[19] The nature of summary judgment is such that a Court must resolve all factual disputes in favor of the non-moving party. Accordingly, while the Court has viewed the record in a light friendly to Plaintiffs' view of the record, that does not, of course, mean a jury will as well.

Defendants finally argue that the additional charges which were arguably brought without probable cause resulted in no further deprivation of Batiz's liberty.  In some scenarios this may be a tenable argument.  Johnson, 477 F.3d at 86 ("[T]he remand is without prejudice to Knorr contending in the district court, as he contended in this court, that Johnson cannot establish a Fourth Amendedment malicious prosecution case because the prosecution for the additional charges for which there might not have been probable cause in no way resulted in additional restrictions on his liberty . . . .").  Under the facts presented by Batiz, however, the Court holds Defendants have not made a showing that Batiz was not subject to further restraints on his liberty as a matter of law.  Batiz was forced to defend against three different-in-type charges on top of the permissible one.  See Id. at 84 (noting that when a defendant faces additional charges brought without probable cause, those charges "almost surely will place an additional burden on the defendant.").  This case does not resemble those in which a similar argument has been considered.  In Stolinski, the Court noted that the additional, unsupported charge was a lesser charge than the supported one and required "simply [that the defendant] produce[] proof that he did not have the tax ID number in question."  772 F. Supp. 2d at 641.  Moreover, the charge in that case was also "closely related." Here, the Court

holds that Batiz has established that defending those additional
charges resulted in additional deprivation of Batiz's liberty
above the theft charge.

### 4. Qualified Immunity

Because the Court has determined that Defendants' arguments
concerning malicious prosecution do not prevail at summary
judgment with regard to Detullio, it must now be determined
whether the doctrine of qualified immunity nevertheless shields
him from liability.  Regarding probable cause determinations by
officers, "qualified immunity forecloses second-guessing their
determination by civil courts." Peterson v. Bernardi, 719 F.
Supp. 2d 419, 429 (D.N.J. 2010).  Thus, having determined that
Batiz has a viable claim for malicious prosecution at summary
judgment based upon the charges of hindering apprehension,
obstruction, and disorderly conduct, "the Court must next ask if
such right was clearly established at the time of the events in
question, *i.e.*, in light of preexisting law-was the unlawfulness
apparent." Smart v. Berlin, Civ. A. No. 07-6103 (RMB), 2008 WL
5156679, at *2 (D.N.J. Dec. 5, 2008).  The Court must also ask,
"would it be clear to a reasonable officer that his conduct was
unlawful in the situation he confronted, or was there a
reasonable, but mistaken belief as to the facts establishing the
existence of probable cause[?]" Id. (internal citation
omitted).

*(a)  Hindering Apprehension*

As to the charge that Batiz hindered his own apprehension, the Court finds that it must reserve on the issue of qualified immunity because a dispute of fact prevents the Court from determining whether it was clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  See Forbes v. Township, 313 F.3d 144, 148 (3d Cir. 2002) (holding that a district court must specifically identify factual disputes precluding qualified immunity determination).  As discussed above, the parties dispute when Detullio's investigation of Batiz for theft began.  (SOF at ¶ 6.)  If Detullio had not begun investigating Batiz for theft at the time Batiz refused to give his information for Detullio's documentation of the civil dispute, the parties do not seem to dispute that Detullio would have been without probable cause to bring the charge.  The parties also do not seem to dispute that it is clearly established that if Detullio charged Batiz with hindering apprehension because Batiz refused to provide his identifying information prior to the investigation even beginning, such a charge would lack probable cause.

On the other hand, if Batiz refused to provide his identifying information after the investigation for theft began, a jury could find probable cause existed to charge him with hindering apprehension, in which case the qualified immunity

analysis is obviated.  A jury might also find, however, that
Batiz's refusal to provide his name, even if done after the
initiation of the investigation, still did not give rise to a
reasonable belief he had committed the offense of hindering
apprehension.  In such a case, this Court would then need to
address the second prong of the qualified immunity analysis with
regard to whether it was reasonable for Detullio to nevertheless
believe he had probable cause to charge the offense.

All of these forks in the analysis, however, stem from the
initial factual determination by a jury concerning when the
investigation began.  As such, the Court cannot decide whether
Detullio is entitled to qualified immunity until the exact facts
are known.

Likewise, as to whether Detullio made a reasonable mistake
of fact with regard to Batiz's truthfulness concerning his name
and birth date, it remains for a jury to decide whether it was
reasonable for Detullio to disbelieve Batiz.  On the one hand,
it is evident from the facts that Detullio could find no record
of a Luis Batiz.  (SOF at ¶ 23; Defs.' Ex. J at 131:9-10.)  On
the other hand, a jury could find that Batiz was forthright with
Detullio concerning his name from the outset, (Defs.' Ex. J at
54:18-19), and Detullio was annoyed by Batiz's behavior, and
thus elected to unreasonably disbelieve anything Batiz might say
as a matter of course.  Given these opposed factual scenarios,

the Court cannot hold, based on the evidence before it, that a
reasonable person in Detullio's position would have perceived
Batiz as giving false information.  While the "responsibility
for answering the ultimate question remains with the court,"
Curley v. Klem, 499 F.3d 199, 211, n.12, 212 (3d Cir. 2007), a
court may use a jury in an advisory capacity at the conclusion
of trial to resolve the "credibility-centered factual
determination" of what circumstances Detullio confronted.
Brandt v. Monte, 626 F. Supp. 2d 469, 485 (D.N.J. 2009).[20]  As
such, for both the mistake of law and mistake of fact issues,
the Court elects to issue interrogatories to a jury to assist in
resolving when the investigation of Batiz began and whether it
was reasonable for Detullio to believe Batiz had given false
information.

<i>(b)  Disorderly Conduct</i>

Likewise, with regard to disorderly conduct, the Court
reserves on the issue of qualified immunity due to disputes of
fact.  As discussed above, Batiz describes his conduct at his
house far differently from Detullio and Brown.  (See supra Part
III(D)(1)(c).)  Should a jury find that Batiz was upset and

---

[20] The Court notes that it could also hold a pretrial hearing on
the issue, Brandt, 626 F. Supp. 2d at 484, however, holding a
"mini-trial" on this issue alone, when other factual disputes
must be resolved by a jury for purposes of the disorderly
conduct charge, would be an unnecessary burden on the parties
and the Court.

engaged in a pointed discussion with Detullio, Detullio even admits this would not be a crime.  (Defs.' Ex. J ("Q: Is it a crime for a person to be irate? A: It is not.").  As such, it would seem clearly established that charging him with one would lack probable cause.  On the other hand, should a jury find that Detullio's description of Batiz is accurate, it may find that probable cause existed, obviating the qualified immunity analysis.

Finally, should a jury find that Batiz was yelling and screaming, but it was nevertheless unreasonable to believe he acted in a tumultuous manner with the special purpose described by the statute, probable cause would not exist.  In that case, Detullio's reasonable belief that the statute nevertheless permitted such a charge may nonetheless entitle him to qualified immunity.  Once again, because this analysis proceeds from a factual determination meant for a jury, the Court will resolve these factual disputes by way of special interrogatories to the jury.[21]

(c)  *Obstructing Administration of Law*

---

[21] Because of the issues of fact that must be determined by a jury prior to a determination" of qualified immunity, "this decision is not an immediately appealable collateral order." Fried v. Tetzlaff, Civ. A. No. 11-cv-2578 (RMB/KMW), 2014 WL 2861098, at *7 n.9 (D.N.J. 2014).

As to the charge that Batiz obstructed administration of law, the Court finds neither of the parties sufficiently briefed the issue.  Specifically, neither party addressed whether it is clearly established that an arrest for obstruction when the arrestee has only refused to provide his information lacks probable cause.  See Camillo, 382 N.J. Super at 121 (holding that it is clear that the language in N.J. Stat. 2C:29-1 requires physical resistance); but see State v. Brennan, 344 N.J. Super. 136, 143 (App. Div. 2001) ("[I]f the police are performing a law enforcement function in an appropriate manner, i.e., not with an excessive use of force, then a citizen is obligated to comply with directions of the police.  Failure to do so can result in a number of offenses, including obstruction, N.J.S.A. 2C:29-1 . . . ."); see generally State v. Hardester, No. 09-031, 2010 WL 3075523, at *4 (App. Div. 2010) (noting discrepancy between Camillo and Brennan).  Accordingly, the Court orders the parties to submit supplemental briefing as outlined in the accompanying order.  The parties shall include in their supplemental briefing arguments concerning whether Detullio is entitled to qualified immunity, despite charging Batiz with obstruction when the parties agree he committed no physical act.[22]

---

[22] The Court notes its intention to proceed with trial despite qualified immunity typically presenting a bar to trial.  Curley,

34

### E. **Abuse of Process**

To establish an abuse of process claim, it must be shown that "prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by law." Rose v. Bartle, 871 F.2d 331, 350 n.17 (3d Cir. 1989).[23] Thus, "[t]he elements of a malicious abuse of process claim are: 1) an "ulterior motive" for the use of process and 2) some further act after an issuance of process representing the perversion of some legitimate use of the process." Rogers v. Henry, Civ. A. No. 02-3495 (RMB), 2006 WL 2850605, at *4 (D.N.J. Oct. 3, 2006) (internal quotation marks omitted).

Plaintiffs orient their abuse of process claim toward Detullio's initiation of "process" in the form of an immigration investigation or detainer. (Compl. at ¶¶ 49-57.) Specifically, Plaintiffs argue that "Detullio initiated an immigration investigation of an American citizen." (Pls.' Br. at 19.) An immigration investigation, though, is not process for purpose of an abuse of process claim. Process "is defined narrowly in the

---

499 F.3d at 209 ("The point of immunity is to protect someone from the burden imposed by litigation itself."). That said, where trial is inevitable based upon the need to resolve factual disputes on other claims, as in this case, that policy does not seem best served by delaying trial any longer.

[23] Because the motion is resolved on the definition of "process," any differences between the state and federal doctrines are immaterial and both of Batiz's abuse of process claims are addressed at once.

context of the tort of abuse of process" and "refers to not all proceedings in a legal action, but rather to certain products of litigation that a court issues, such as a summons, mandate, or writ used by a court to compel the appearance of the defendant in a legal action or compliance with its orders."  Avaya, Inc. v. Cisco Sys., Inc., Civ. A. No. 10-5881 (FLW), 2012 WL 2065536, at *3 (D.N.J. June 7, 2012) (emphasis in original); see also Ruberton v. Gabage, 280 N.J. Super. 125, 131 (App. Div. 1995). Here, the record does not show immigration proceedings or an immigration detainer issued by a judge sufficient to render it the initiation of legal process.  Accordingly summary judgment is proper.[24]

**F. Conspiracy**

Defendants argue that "[i]f this court grants defendants' motion for summary judgment as to the predicate claims, the court should also do the same with respect to the conspiracy claim because this claim is based upon the predicate claims." (Defs.' Br. At 48-49); see In re Orthopedic Bone Screw Prods. Liab. Litig., 193 F.3d 781, 789 (3d Cir.1999)("[O]ne cannot sue a group of defendants for conspiring to engage in conduct that

---

[24] Neither party has done a satisfactory job of briefing this issue.  Hence, if this Court has overlooked certain case law, a party may seek this Court's reconsideration, after satisfying this Court as to why the issue was not properly briefed in the first instance.

would not be actionable against an individual defendant . . .
[rather] actionable civil conspiracy must be based on an
existing independent wrong or tort that would constitute a valid
cause of action if committed by one actor.").  Accordingly, the
Court will grant summary judgment on all conspiracy claims
predicated upon claims against Detullio for which summary
judgment was granted above.

With regard to conspiracy, Plaintiff has pointed to no
evidence in the record that Defendant Brown was involved in
Detullio's alleged malicious prosecution.  Searching the record,
the Court finds only that Detullio told Brown that Batiz was
going to be charged with theft.  (Defs.' Ex. K at 35:1-35.)
This is insufficient as a matter of law to demonstrate a
conspiracy charge.  Accordingly, summary judgment as to
Defendant Brown is appropriate.

## IV.   CONCLUSION

Based upon the preceding analysis, the Court GRANTS
Defendant Brown's motion for summary judgment on all claims.
The Court GRANTS Defendant Detullio's motion for summary
judgment with regard to Batiz's state and federal claims for
false arrest, false imprisonment, abuse of process, and the
associated federal conspiracy charges.  The Court GRANTS
Defendant Detullio's motion for summary judgment with regard to
Challenger's state and federal claims of false arrest, false

imprisonment, and the associated federal conspiracy charges. The Court GRANTS Defendant Detullio's motion for summary judgment on Batiz's state and federal claim for malicious prosecution on the theft charge.  The Court DENIES Defendant Detullio's motion for summary judgment with regard to Batiz's state and federal claims for malicious prosecution for hindering apprehension, obstruction and disorderly conduct, and the associated federal conspiracy charges.  The Court reserves on the issue of qualified immunity with respect to malicious prosecution for hindering apprehension and disorderly conduct until factual disputes can be resolved by the jury.  The Court also reserves with respect to the obstruction charge until the parties have completed supplemental briefing.


DATED: September 30, 2015



                                    s/Renée Marie Bumb
                                    RENÉE MARIE BUMB
                                    UNITED STATES DISTRICT JUDGE